I'll simply turn to the first case on our calendar, which is Controlled Air v. William Barr and others. Counsel, good morning. Attorney Glenn Formica for the petitioner, Controlled Air, Inc. v. Mukherjee. You may proceed. Your Honor, this appeal and the petition in this case involves a question of whether the district court erred in dismissing a lawsuit, a complaint, based on Federal Rule of Civil Procedure 12b-6. In essence, Your Honor, the district court decided that the petitioner wasn't able to, even if the petitioner approved all the allegations in the complaint, that we hadn't made out a claim. And that claim, the factual dispute, Your Honor, that needed to be litigated and needed time to be developed, involved whether or not... What do you think you would develop? There were the two different dates. One was in one fiscal year, one was in another. What evidence would you have developed? Your Honor, turning to the government's brief at page 38, I think they said it best. On page 38, the government argues the reliance is misplaced because the agency's position regarding inappropriate start dates was well-publicized, known throughout the industry, and dates back several years. Even the government acknowledges that there were other issues as to whether or not that was an arbitrary decision, or at least whether or not its decision was based on a rule that was, in their words, well-publicized and known throughout the industry and dates back several years. If the case was allowed... Didn't the papers that Controlled Air had in front of them tell them the start date was the beginning of the fiscal year? Other than the fact that it's the fiscal year, the start date itself is not part of the Code of Federal Regulations. In other words, Controlled Air was denied its petition because the agency determined that there's a rule that says it has to be on the fiscal year start date. Counsel, that really makes sense to me because there are a limited number of these visas that can be granted in a fiscal year, so if they take applications in the middle of the fiscal year, they've either used them all up already and there are none left, or they can't plan how many for a year. That's why I think the rule makes sense, but convince me otherwise. Your Honor, so a fundamental tenet of our argument, Your Honor, is that there is no rule that, as the government describes, requires it because the way the process works, Your Honor, is that on April 1st is the first day that you can file a petition. That's it. That's their lottery system. The petition itself, Your Honor, requires labor certification that's valid, and that's part of the Federal Regulations. So if the labor certification can only be valid prior to the start of the fiscal year, the question becomes how is that logical that you could deny somebody for not using a petition? Do you agree with the April 1st date that that's clear? Your Honor, I would agree that the April 1st date is the start of the fiscal year. But not the start of the fiscal year, but the start of the first day on which you can file the application. April 1st, correct. I was transposing that. But you agree with that. April 1st is the first day. Correct. Your Honor, I want to point out in the record at page 86 in the denial itself, I don't believe that there's any dispute that Controlled Error filed its petition for that fiscal year. If you look at the language, and it's a brief denial. Page what? Page 186 of the Joint Appendix. Okay. The denial itself says, all H-1B subject petitions received at the California and Vermont Service Centers from April subject to H-1B petition during this filing period in your petition was selected towards the cap. So, I don't think there's any factual dispute that the petition that was submitted was for that lottery that was filed, and it was toward the cap. I think the issue then becomes whether or not, and we've laid this out in our briefs, is whether or not the government can say, we know we want you to certify to a start date on a labor certification, which is a prerequisite to even filing this. In other words, if we hadn't filed a labor certification, we wouldn't be filing, it would have been rejected for not having a labor certification. In that labor certification, you have to swear that everything is true, at the start date. But then the government has this other rule, different agency, that's not in the regulations, it's not in the statute, it's not in the regulations, and it's not in the rules, and it's not on the form, that says you just need to put October 1st. And if you put October 1st, we're going to accept it. That makes absolutely no sense. And what that really says is that you need to be disingenuous on your labor certification. I think the bigger issue that the government has... There's no rule that says these dates have to be identical, is there? Your Honor, there is a rule, because if you, and we've laid this out in the appendix, if you look at the forms themselves, you have to certify that those statements are true. True, but a date is not necessarily true or false. Your Honor, unless they were crossing their fingers behind their backs and saying, well, we're going to say one thing on our labor certification and say to you that this is our start date, but we don't really mean it. I will ask the government about this alleged inconsistency. I'm sorry. You have a few seconds left. Doesn't section 655 impose a six month buffer after the submission of the application? Yes, Your Honor, and I think that's what reconciles why the labor certification... The start date is consistent all the way through. I don't think the regulations are really telling people that you need to put one thing down on a labor cert, something different on the petition. I think it's just important. I know I'm running it over my time. I think it's... You have reserved three minutes for rebuttal, however. I'll save it for rebuttal. Thank you, Your Honor. Thank you. We'll hear from the government. Counsel? Thank you. Good morning, Your Honor. It's Joshua Press on behalf of the government defendants. I think that the questions posed really for the same reasons as given by the district court should resolve this case in a relatively straightforward and simple manner. We understand Mr. Formica's essentially a catch-22 argument with respect to how the Department of Labor has their own regulations as to what they require for the labor DLCA, the labor certification application. I do want to note and flag that the Department of Labor's LCA actually addresses a different issue as described and gotten into by this court last week in Aleutian Capital Partners. I apologize for not providing the panel with... Well, yes. Thank you, Judge Laurier, because I know you got... You got two of us on the panel, on this panel. And so, in short, the point of the LCA is not what Mr. Formica has sort of imagined it to be. It's not to catch people into a catch-22. The larger point is a prevailing wage rate determination so that U.S. workers will not be sort of left in the lurch and that the temporary foreign worker will not be substantially underpaid in any sort of way as to the press wage rates in the United States. Is there anything, Mr. Press, just out of interest that would prevent the petitioner here from filing a new petition? Well, no, not for the subsequent cycles at all. There's nothing to prevent that. I think the problem... For fiscal year 2021, it's a little late, but yeah. I think the problem is that the applicant, the beneficiary, as he's called, might not be in this country. He was on a student visa and then a training visa. And when they expire, he can't stay. Is that correct, Mr. Press? So, Judge Bull, your description of what could happen is correct. I would say that there's nothing to prevent the petitioner from reapplying in that scenario. I do want to flag, though, that I looked into this yesterday. And my understanding is that plaintiff, Mr. Mukherjee, is currently in valid F-1 student visa status here in the United States. He's enrolled in a master's degree program at New England College through July 15, 2022. He's actually... But the larger point is, to address Judge Lohier's question, there isn't anything to prevent them from filing for the next fiscal year cycle. So in April, this coming April, they can reapply again for the same position. That might actually work out better for Plaintiff Mukherjee's... Counsel, do you believe that the applicant here, Controlled Air, got conflicting advice from the two forms that it had to submit? That's the heart of Mr. Formica's argument, I believe. Would you agree to that? No, so we definitely disagree with that. It's mainly based off of teleological reason. The form for the Department of Labor, which, by the way, is not a defendant in this case, is, as the panel last week got correctly, it's to get to the prevailing wage determination. And the reason why you say, well, our period of temporary need, in this case, for example, will be for August 26, 2019, until perhaps two or three years down the line, that's to provide the Department of Labor with a time frame so that they can do a snapshot in time. That's a predictive judgment. It's not always accurate, but the point there, as the Aleutian Capital Partners panel correctly summarized, is really just to do a front-end snapshot, not a thorough investigation of what is going on with this particular petitioner or anything like that. It's also petitioner-based. It's company-based, whereas the USCIS form and the regulations with respect to the six-month window and the H-1B visa lottery, that is much more beneficiary-focused, specifically to the point of whether the beneficiary could qualify for that specialty occupation position, because it is supposed to be for specific specialty degrees and jobs that U.S. workers could not do. And all of that is to say, for the purposes of USCIS, when they do an accounting each fiscal year because of the congressional statutory caps, they have to know when to start and stop the clock. But the argument that Mr. Formica was making, I think, is that he has to certify the truthfulness of the information on the LCA. And if he gave a starting date different than what was on there, it would make it untruthful. I think that's the argument. Can you respond to that? Yes, so there isn't actually anything untruthful with saying my period of temporary need for the Department of Labor to do a prevailing wage determination would begin on August 26th, but my actual employment start date for the beneficiary would begin on October 1st, because obviously those two time periods, well, one is before the other. And there's no problem with saying my period of temporary need will start prior to the job start date. It's really the job start date that Congress had directed the agency before the INS, currently the USCIS, to start the clock, because that's the only rational way as to define statutory regulations. Well, don't people there have been allowed to pay Mr. Mukherjee from August 26th or whenever the date is before September 1? Would they have been allowed to pay him? Well, I'm not sure with respect to actual payment determinations. What I can say is that he could not be an H1, Mr. Mukherjee could not be an H1B status prior to- I understand that's your argument, but could they have paid him if he was supposed to start working a month earlier? Could they have made it legally? I think that they can pay him in terms of somewhat with respect to the, I think he was an optional practical training, and currently he's in curricular practical training for doing substantially similar work. But I think the larger point there is not, that's a Department of Labor issue, which is not, as I said, a party in this case, not really a USCIS visa number petition granting determination that is really the sole focus for USCIS in this process. On the I-129 petition, your friend, Mr. Formica, pointed out the language and your petition was selected towards the cap. It's a 186, I think of the appendix. Yes, sir. Is that right? Yeah. What does that mean? Well, that means that he was basically, they won the lottery, the H1B visa lottery with respect to, they were selected and they started to be adjudicated. A lot of petitioners, and this is the other larger background principle here. There are literally hundreds of thousands of H1B petitioning companies each cycle. So each April 1st to April 5th is an extremely busy time for USCIS. Apparently hundreds of thousands of H1B petitioners usually understand this process and know that the first date that they can actually begin H1B employment for their beneficiary is October 1st of that coming fiscal year. So when it said cap subject and it was selected for the cap, it meant you were selected to be counted for the cap starting fiscal year 2020. So you could be one of the 65,000 lucky people. Yes, in this case, because I believe Mr. Mukherjee has a master's degree in the 20,000 master's cap. So that's a total of 85,000. But the larger point is that it really just means you were selected, but because you selected a start date that was for the prior fiscal year and that fiscal year would have been exhausted, we're done. We have to deny your application and we're gonna stop processing your application because we have literally tens of thousands of other applications to process prior to October 1st, 2019. In short, we actually think that the district court got it fundamentally correct with respect to if you're listing an amorphous start date, then the agency, it's impossible for the agency to actually count that towards the correct fiscal year cap as Judge Lodea's question was getting at. And that is a perfectly rational basis to deny an application. And of course the petitioner is allowed to file another application for the next fiscal year cycle, along with others who were not selected in the H-1B lottery or others who had been rejected for various reasons. We'd also like to point out that we agree with Judge Arlington's equal protection analysis. There's absolutely nothing here that would differentiate controlled error from the many thousands of applications that get rejected each fiscal year cycle, some of which are for similar reasons, but most of which are for various other reasons. And without any sort of comparator to controlled error, the pleading itself was entirely conclusory and perfectly within the Trombley-Iqbal sphere of 12B-6 dismissal. In short, we ask that you refer. Thank you. Thank you, counsel. Mr. Formica? Your Honor, I just want to emphasize with the court that I think the issue of whether or not there are two sworn statements is an uncomfortable issue for the government. And I don't think that splitting hairs on whether or not their intention on one application is different than on another one really works. But I think beyond that, Your Honor, getting to the heart of this case, looking at it from a 12B-6 is there is no rule and they still haven't articulated on appeal what the rule is that says you have to list the start date of October 1st. It just doesn't exist. The rule is that they're discussing and what they discuss in their brief talks about the lottery system. By their own decision, Controlled Air made the cut. They made the lottery. They have their position. The next question is, can they substantively deny that petition because it doesn't list October 1st as a start date? There's no rule that allows for that. If anything, looking at the regulations logically so that they're not in conflict, the petition precedes the actual issuance of the visa. It would make sense that the start date would actually, to a certain extent, precede the start date of the visa because you have to get the petition approved first. Once the petition's approved, then you apply for the visa. And in their brief, the government tries to distinguish, well, visa really is a broad concept in a term. It's really not. It has a U.S. code and it has federal regulations that govern those visas. That visa, those visa numbers, visa numbers which are subject to the lottery, they're limited in number and they get issued that allow controlled air to have its employee stay in the country and work lawfully. I would also add, Your Honor, that in my client's particular circumstances, it's not just as easy as applying for the next year. Yeah, I was going to ask you that. Why wouldn't you do that? Well, for one thing, Your Honor, and I don't want to get outside the record, he did apply for the MasterCard this year. It was not selected. I mean, it's a very competitive process. He's in trying his best to hold on to a legal status the best he can. So he's back in school, continuing his education. But to just presume he can go and file and he'll get it next year, it doesn't really work that way. I think the bigger issue, Your Honor, is whether it was fair that controlled air was denied this petition. And if you look at why they denied it, you can't tie it out. If nothing else, if the panel can't agree amongst itself or doesn't necessarily reconcile with the parties, I think if nothing else, this needs to be developed further in the court. We have a stipulation that protects his status, which is part of the record temporarily while this litigation is ongoing. And if nothing else, he goes back to the court. If the government believes that this is well-known and as Attorney Press just told the court, it's just known, well, then let's see that. How is it well-known? Because in this case, it was a tips page where a disclaimer says that it's not a rule or regulation. And it was informal guidance that says very specifically, not formal guidance. There's no rule that says October 1st. That's- I'm trying, maybe it's too early in the morning, but there is an acknowledgement that April 1st is a trigger date. So the first possible date. And then there seems to be a regulation that talks about the six month buffer. So it makes sense to me that October 1st is the first available date. Your Honor, if I leave the court with one thing is that that six month that they're talking about relates to the lottery, the selection process. It's not relating to the substance of the petition. I know this stuff is very convoluted, but one is talking about the selection process, control there made the selection process. It met that six month. The next issue is whether or not the start date, the start date is a substantive requirement that it's a rule that you have to list October 1st or you're not going to be accepted. There's no rule. I mean, the government's brief is silent on that. And it's silent because there is nothing in the regulations that require it. And that's basically the sum of our argument is that if you look at what's required, I would ask the government whether or not they want stale LCAs that they're going to be approving as the basis of H-1B petitions, because there's no way you could file an LCA with October 1st. And we lay that out in our brief that it's a factual impossibility. Thank you, counsel. Your time has expired. We will reserve decision. Thank you for a very good argument. Thank you, Your Honor. Be well.